## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MIDLAND MORTGAGE CO.** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 07-4910** |
| | * | |
| **STATE FARM FIRE & CASUALTY CO.,** | * | **SECTION "L"(1)** |
| **STATE FARM GENERAL INSURANCE** | * | |
| **COMPANY, AND STATE FARM MUTUAL** | * | |
| **AUTOMOBILE INSURANCE COMPANY** | * | |

## <u>ORDER & REASONS</u>

Before the Court are the parties' cross-motions for summary judgment (Rec. Doc.

Nos. 26 and 28). For the following reasons, the Defendants' Motion for Summary Judgment

(Rec. Doc. No. 26) is GRANTED, and the Plaintiff's Motion for Summary Judgment (Rec. Doc.

No. 28) is DENIED.

## I.       BACKGROUND

This case arises out of damages to property as a result of Hurricane Katrina. Midland

Mortgage Company ("Midland") was the named mortgagee under the flood insurance policy

issued to Jose E. Bueso and Leann Leonard Bueso (the "Buesos") for the property located at 73

Phillip Court in Chalmette, Louisiana. Midland is retained by lenders to service mortgage loans.

On August 28, 2007, Midland filed suit against State Farm Fire & Casualty Insurance Company,

State Farm General Insurance Company, and State Farm Mutual Automobile Insurance

Company (hereinafter "State Farm"), alleging that State Farm failed to name Midland as the

payee or co-payee on the insurance policy, or, in the alternative, that it failed to pay Midland insurance proceeds owed.

Midland is a corporation organized under the laws of the state of Oklahoma with its principal place of business in Oklahoma. State Farm is alleged to be an Illinois corporation licensed to issue insurance policies in Louisiana, as well as a Write-Your-Own ("WYO") Program carrier for the National Flood Insurance Program ("NFIP").

On October 3, 2008, the Court granted Midland's motion to dismiss all of its other claims against State Farm, with the exclusion of the Bueso matter. The Bueso matter involves State Farm as a WYO flood insurance carrier. Midland seeks damages for breach of contract, and equitable and punitive relief including costs, attorneys' fees, penalties and interests.

At the time of Hurricane Katrina, State Farm had issued a Standard Flood Insurance Policy ("SFIP") Number 98-RG-4600-1 for dwelling coverage on the Buesos' property with limits in the amount of $75,000. In the Buesos' policy, Midland was named as a mortgagee. On February 23, 2006, State Farm issued a check payable in the amount of $75,000 to Jose Bueso and Midland. On May 18, 2006, Midland returned the check and requested that State Farm reissue the check payable to Midland only. Subsequently, State Farm paid Jose Bueso the $75,000, and that check was never negotiated. On or about April 4, 2007, Midland foreclosed its mortgage lien on the Buesos' property, and bought the property at a sheriff's sale for $11,667.00.

On August 22, 2007, State Farm issued a check to Midland in the amount of $52,156.89, the unpaid principal balance of the mortgage ($63,823.89) minus the foreclosure sale amount ($11,667.00).

## II.        THE MOTIONS

Midland asserts that it is entitled to reimbursement for its loss due to flood damage,

up to the full amount of the policy limits. It asserts that this loss is $97,029.18, the full amount of indebtedness owed to Midland by the Buesos, including the unpaid principal balance ($63,823.89), interest ($17,631.51), late charges ($1,023.00), fees ($8,014.78), and escrow funds advanced pursuant to the loan documents and mortgage contract between Midland and the Buesos ($6,536.00).

In response, State Farm asserts that Midland's loss is limited to the unpaid principal balance owed by the Buesos, $63,823.89, less the $11,667.00, for a total of $52,156.89. State Farm argues that interest is not recoverable under this insurance policy because it is a Standard Flood Insurance Policy ("SFIP") written under the National Flood Insurance Program ("NFIP"). Thus, all flood claims are paid with U.S. Treasury funds. Under federal law, State Farm may not alter, amend or waive any portion of the SFIP. Further, State Farm asserts that the SFIP contract names Midland as mortgagee and states that any loss payable will be paid to the mortgagee, as interests appear. This clause is not a standard mortgage clause, but rather a loss payable clause which limits recovery to the mortgage debt. State Farm also argues that Midland's opposition to State Farm's motion was filed two days late and should be stricken; State Farm's motion should be granted as unopposed.

### III.       LAW AND ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But

because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

### A. Whether the Mortgage Clause is a Loss Payable Clause or Standard Mortgage Clause

Where a mortgagor has taken out insurance made payable to a mortgagee as interest may appear, or for the benefit of the mortgagee, "the mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt." *Adams v. Allen*, 19 So.2d 578 (La. App. 1944); *see also Hussain v. Boston Old Colony Ins. Co.,* 311 F.3d 623 (5th Cir. 2002); *Leon A. Minsky, Inc. v. Providence Fashions, Inc.*, 404 So.2d 1275 (La. App. 1981) ("mortgagee is entitled to the proceeds of the policy to the extent of his mortgage debt due at the time of loss").

An insurance policy may include either a loss payable clause or a standard mortgage clause. A simple loss payable or open-mortgage clause simply provides that the mortgagee shall be the first paid from the proceeds of the policy as his interests may appear. *May v. Market Ins. Co.*, 387 So.2d 1081, 1083 (La. 1980) (citing Couch on Insurance § 42:648 (2d ed. 1963)). The purpose of a loss payable clause is to "protect the mortgagee's interest, which is the balance of the mortgage debt." *Chrysler Credit Corp. v. Louisiana Ins. Guar. Assn.*, 514 So.2d 245, 247 (La. Ct. App. 5th Cir. 1987). "When the policy contains a simple or open loss payee clause, the contract remains one between the insurer and the insured." *Seafirst Commercial Corp. v. United States Fidelity and Guar. Co.*, 780 F.2d 1290, 1293 (5th Cir. 1986). On the other hand, a union or standard mortgage clause is more specific in that it also creates a separate contract of insurance between the insurer and the mortgagee to ensure that the mortgagee shall be protected

from any loss resulting from the acts or neglect of the mortgagor or owner. *See May*, 387 So.2d at 1083 (La. 1980) (citations omitted).

Midland argues that the Note[1] and Mortgage[2] provide that costs and expenses, including attorneys' fees, interest, and other charges are required in payment under the agreement. However, the Note and Mortgage that Midland refers to were the contracts between Midland and the Buesos. The contract currently at issue is the mortgage clause of the flood insurance policy between State Farm and the Buesos. The relevant contract between State Farm and the Buesos does not provide for recovery of attorneys' fees, interest, and other charges, such as escrow fees or late charges. Further, the mortgage clause in Article VII(Q) of the Standard Flood Insurance Policy ("SFIP") provides that any mortgagee will be paid as their interests appear, and does not create an additional contractual relationship between Midland and State Farm.[3] Thus, the SFIP contains a loss payable clause, not a standard mortgage clause, and

---

[1] Rec. Doc. No. 33-2.

[2] Rec. Doc. No. 33-3.

[3] *See* 44 C.F.R. Pt. 61, App. A(1). The full mortgage clause provides:
Q. Mortgage Clause
The word "mortgagee" includes trustee.
Any loss payable under Coverage A--Building Property will be paid to any mortgagee of whom we have actual notice, as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.
If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
1. Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;
2. Pays any premium due under this policy on demand if you have neglected to pay the premium; and
3. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.
All of the terms of this policy apply to the mortgagee.
The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.
If we decide to cancel or not renew this policy, it will continue in effect for the benefit of the

Midland is entitled to recover only to the extent of the mortgage debt, which is in this case the balance of the unpaid mortgage.

Plaintiff Midland asserts that *Grady v. Utica Mutual Insurance Co.* provides guidance to determine the mortgage debt the insurer is required to pay the mortgagee. 419 N.Y.S.2d 565 (NY Ct. App. 1979). The court in *Grady* found that "The lien of the mortgage is comprised of the outstanding principal of the debt with interest due thereon to the date of computation." *Id.* at 570. Further, the *Grady* court deemed it appropriate to add to this sum, "the amount of any moneys paid by the mortgagee to protect his security on account of overdue taxes and assessments which the mortgagor has neglected or refused to pay." *Id.* For two reasons, the insurance policy at issue in *Grady* is distinguishable from the policy in the instant case. First, the court interpreted the insurance policy in *Grady* to be a standard mortgage clause, not a loss payee clause which is presently at issue. Second, the insurance policy at issue in *Grady* was not a Standard Flood Insurance Policy written pursuant to the NFIP.[4]

### B. Midland's Recovery Pursuant to the SFIP

It is well established that federal law governs actions arising from claims under a SFIP. *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978), cert. denied, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979) ("Since the flood insurance program is a child of Congress conceived to achieve policies which are national in scope, and since the federal government

---

mortgagee only for 30 days after we notify the mortgagee of the cancellation or non-renewal. If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

[4] Additionally, the Plaintiff cites *Kennon v. Camp*, where the court found that the amount of mortgage debt due included "principal and interest" due the second lien holder from insurance proceeds. 353 S.W.2d 693, 697 (Mo. 1962). However, unlike the instant case, in *Kennon* the policy at issue contained a standard mortgage clause and was not written pursuant to the NFIP.

participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision presented in this case mandates the application of federal law.").

Many Sections of this Court have succinctly discussed the basic contours of the NFIP and the various requirements that it imposes:

> [The NFIP] is intended to be a unified national program for providing flood insurance. It is underwritten by the United States Treasury and administered by the Federal Emergency Management Agency. Under its regulatory authority, FEMA developed the SFIP and the WYO program, which authorizes private insurance companies to issue SFIPs. Although the private insurance agencies issue the SFIPs, they are acting as fiscal agents of the United States. As mentioned above, [State Farm] is a WYO program carrier authorized to issue and administer SFIPs under its logo.

*Rodgers v. Allstate Ins. Co.*, No. 06-3685, 2007 WL 1029480, at *2 (E.D. La. Mar. 30, 2007). The terms and conditions of federal flood insurance policies are fixed by FEMA, and insurers may not waive or alter any provision of a SFIP without the express consent of the Federal Insurance Administrator. *See Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

As the contract at issue does not provide for the recovery of costs and attorneys' fees by the mortgagee, State Farm urges the Court to find that extra-contractual claims can also not be recovered by Midland. State law claims against a WYO insurer, such as State Farm, based on the handling of an insurance claim are preempted by the National Flood Insurance Act ("NFIA"). *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005); *Gallup v. Omaha Property and Casualty. Ins. Co.*, 434 F.3d 341, 345 (5th Cir.2005) ("state law tort claims arising from claims handling by a WYO are preempted by the [NFIA]"); *see Newton v. Capital Assur. Co., Inc.*, 245 F.3d 1306, 1312 (11th Cir. 2001) (the financial relationship between FEMA and WYO companies establishes that interest awards are direct charges against FEMA and the public

treasury); *West v. Harris*, 573 F.2d 873 (5th Cir. 1978) (a plaintiff who succeeds in his claim for a policy pursuant to NFIA "is not entitled to recover the penalty and attorney's fees provided by [the state].").[5] Thus, Midland cannot recover state-law based extra-contractual claims under the SFIP.

Furthermore, the Court must deduct the proceeds of foreclosure from the mortgage debt constituting Midland's award. The interest of a mortgagee is "intended to provide for a diminution ... by the reduction, by payment or otherwise, of the amount of the debt." *Rodriguez v. First Union National Bank*, 810 N.E.2d 1282, 1285 (Mass.App.Ct. 2004) (internal quotations omitted) (citing *Ben-Morris Co. v. Hanover Ins. Co.*, 3 Mass.App.Ct. 779, 779, 333 N.E.2d 455 (1975)). When a mortgage debt is "reduced by ... the foreclosure sale, the [mortgagee's] entitlement to recover and retain the insurance proceeds was extinguished to that extent." *Rodriguez*, 810 N.E.2d at 1285 (citing *Duclersaint v. Federal Natl. Mort. Assn.*, 427 Mass. 809, 811-812, 696 N.E.2d 536 (1998)). Accordingly, Midland is entitled to the unpaid mortgage balance of $63,823.89 minus the $11,667.00 paid at the foreclosure sale, for a total of $52,156.89.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendants' Motion for Summary Judgment (Rec. Doc. No. 26) is hereby GRANTED. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 28) is hereby DENIED.

---

[5] However, the *West* court allowed for recovery of prejudgment interest against a private company selling federal flood insurance. 573 F.2d at 883-84. The *Newton* court discussed that *West* (1978) was decided when the NFIP was structured differently than at the time of their decision (2001). 245 F.3d at 1310. Further, *Newton* found that the federal program in *West* was comprised of "more attenuated relationship[s]" between private insurers and the federal agency in control of the NFIP. *Id.* at 1310 n.2.

New Orleans, Louisiana this 23rd day of June, 2009.

UNITED STATES DISTRICT JUDGE